Shatjck, C. J.
The questions presented are not affected by the act of March 19, 1887, to define the *252 rights and liabilities of husband and wife ('84 O. L., 132), nor by the act of April 3, 1861, “concerning the rights and liabilities of married women” (58 O. L., 54). The act of the earlier date did provide that an estate of the character of this vested in a married woman should “be and remain her separate property and under her sole control,” but it did not assume to change the authority of the wife over, nor the rights of the husband in, any lands whose title had previously vested in her. In the fifth section it was expressly provided, “This act shall not affect any rights which may have become vested in any person at the taking effect thereof.” Since Mrs. Westlake’s title in these lands had previously vested in her, and by the marriage the husband’s rights had vested in him, they continued to be her general and not her separate property notwithstanding the act of 1861. The cases cited by counsel for defendant concern the separate property of the wife. They were influenced if not controlled by the act of March 23, 1866, “to amend sections 1 and 3 of an act entitled ‘an act concerning the rights and liabilities of married women,’ passed April 3, 1861,” (63 O. L., 47). That act amended section 1 of the act of 1861 by authorizing the wife during coverture to make contracts for labor and materials for improving, repairing and cultivating her separate property. It also amended section 3 of the act of 1861 by providing that the wife’s separate property should be liable to be taken for any judgment upon a contract which the first section authorized her to make. It did not amend section 5 of the act which provided that it should not affect interests already vested. The amending act gave to the wife a more extended control over her separate property but it did not expressly or by implication give a separate character to property which had theretofore been general. It follows that until the death of her husband in December, 1883, these premises were the general property of the plaintiff *253 and not subject to her control under the provisions of these acts.
Since there was no evidence that a deed conveying these premises from the plaintiff to the defendant had been signed, sealed and acknowledged by her, as required by the statute defining the mode in which such a title might be conveyed by a married woman, the instruction given to the jury upon the subject of dedication assumed that the doctrine of estoppel might be so applied to her acts in pais as to divest her of title in her general property without compliance with the statute. It is not likely that this assumption would have been made if it had been observed that the case is not affected by any of the legislative enactments referred to. That this instruction was erroneous is made sufficiently apparent in Todd v. Pittsburg, Ft. Wayne & Chicago R. R. Co., 19 Ohio St., 514, where the true doctrine is stated find applied to a case differing in no essential respect from this. It was sought to so apply the rules of estoppel to a married woman’s act in pais as to defeat her action to recover possession of her lands after the death of her husband, but the court said: “During her coverture she had no power to bind herself by contract. No agreement of hers for the conveyance or encumbrance of her real estate, hoAvever solemnly entered into, could be enforced by a decree for specific performance. She could only dispose of or encumber it in the mode prescribed by the statute. And what she could not deprive herself of by direct and express contract with the defendant, we think it clear that she could not lose by the indirect method of an estoppel in pais, arising from facts such as those found in this case.”
There was no conflict in the evidence as to any fact material to the statutory limitations upon the plaintiff’s action. The action was brought more than twenty-one years after the defendant took possession of the ground in controversy, and more than ten years after *254 the plaintiff. was relieved of the disability of coverture. If her cause of action accrued when the city took possession of the ground, the instruction given upon this subject was correct and the city was entitled to a verdict and judgment. If, however, her cause of action did not accrue until the death of her husband in 1883 it is quite clear that the instruction was erroneous, since the provision of the statute is that such an action “can only be brought within twenty-one years after the cause of such action shall have accrued.” The action is to recover possession of the property. Plainly no cause of action for that purpose accrued in Mrs. Westlake until she was legally entitled to the possession. In considering whether the right of possession was in her or in her husband while he lived, it should be borne in mind that it was her general property, and that her rights Avith respect to it were not enlarged, nor his diminished, by the legislation already referred to. It was in view of the previous dominion of the husband over the lands of his Avife during their joint lives that the act of 1861 was necessary, to the end that the wife might have control of them. That dominion included the right to occupy and lease and receive rents and profits. Whatever possessory right the wife had was domestic and not proprietary. The question is not affected by Williams v. Urmston, 35 Ohio St., 296, nor by Hershizer v. Florence, 39 Ohio St., 516. They were suits in equity to charge the estates of married women with their collateral obligations. In the former case the estate charged was admitted to be separate. In the latter, which was decided in 1883, it was said: “The rights of the husband which vested in him prior to the act of 1861, are not affected. He is still entitled jure uxoris to the possession, rents and profits during the joint lives of himself and wife. * * * The act of 1861 certainly did not convert his right of possession into the separate property of the wife, because it was a *255 vested right and the act could not and did not purport to have that effect.” The case before us does not call for the application of the equitable principles recognized and applied to those cases. The plaintiff sued at law to recover possession of lands to which she was not entitled until the death of her husband in 1883.
Concerning other reasons urged by counsel for the defendant for the affirmance of the judgment it is sufficient to say that the ground of estoppel was not pleaded nor were all the essential elements of estoppel proved.
For the errors indicated, the judgments of the circuit and common pleas courts are

Reversed.